# CASES

IN THE

# SUPREME JUDICIAL COURT

OF THE

## STATE OF MAINE

---

THE DOMINION FERTILIZER COMPANY *vs.* T. HERBERT WHITE.

Penobscot.   Opinion April 3, 1916.

*Actions of tort and contract brought by foreign corporations.   Interpretation of Chapter 152, Laws of 1911.*

1.  The provision in chapter 152 of the Laws of 1911, that if a foreign corporation fails to file with the secretary of State the certificate required in section 2, "such failure shall not affect the validity of any contract with such corporation, but no action shall be maintained or recovery had in any of the courts of this State by any such foreign corporation so long as it fails to comply with the requirements of said section" is held not to apply to an action of trover brought by a non-complying foreign corporation against an attaching officer who attached, as the property of a third person, goods claimed by it to belong to the corporation.
2.  The limitation in chapter 152 of the Laws of 1911 of the right of a foreign corporation which has not complied with the requirements of section 2 of the chapter, to maintain an action in the courts of this State applies only to actions on contracts, and not to actions for wrongs against the corporation's property, which do not grow out of any contract it has made.

Action of trover to recover the value of fifty tons of fertilizer seized and sold by one of the deputies of the defendant on a judgment recovered against one Carroll B. Burns.   Defendant pleaded general issue and filed brief statement alleging that the plaintiff

corporation could not recover in this action, because it was a foreign corporation and had not complied with certain statutes of the State of Maine relative to foreign corporations doing business in this State.    The evidence disclosed at the trial that the plaintiff company was a foreign corporation and had not complied with the provisions of chapter 152 of the Public Laws of 1911, requiring such corporations to pay certain fees and to perform certain other acts, as provided in said chapter.

At close of all the testimony, the defendant requested the court to direct a verdict for defendant, on the ground that the plaintiff corporation, being a foreign corporation, did not comply with the provisions of chapter 152 of the Public Laws of 1911 of the State of Maine.    The court thereupon directed the jury to return a verdict for the defendant.    To this ruling of the court, the plaintiff filed exceptions.    Exceptions sustained.

Case stated in opinion.

*Ryder & Simpson,* for plaintiff.

*Morse & Cook, W. H. Mitchell, and L. V. Jones,* for defendant.

SITTING:  SAVAGE, C. J., CORNISH, KING, HALEY, HANSON, JJ.

SAVAGE, C. J.    Action of trover against a sheriff for the value of a certain quantity of fertilizer.    The fertilizer was attached on a writ, and sold on execution by the defendant's deputy as the property of one Burns.    The plaintiff claims that the fertilizer was consigned by it to Burns, but not sold to him, and that it was the owner at the time of the attachment.

The plaintiff is a foreign corporation located at St. Stephens, New Brunswick.    It shipped the fertilizer in question from St. Stephens to Burns at Levant, Maine.    It was shipped to Burns to be sold by him, as agent, in this State.    Mr. Dresser, the plaintiff's manager, resides in Calais, Maine, where he has an office, and where he transacts more or less of the plaintiff's business.    The plaintiff has about one hundred agents in this State, to whom it consigns fertilizer for sale at their respective places of business.    And some of them, at least, advertise that they have fertilizer for sale.

At the conclusion of the trial of this case, the presiding Justice directed a verdict for the defendant on the ground that the plaintiff

being a foreign corporation had not complied with the provisions of chapter 152 of the Laws of 1911. The plaintiff excepted.

Section 1 of chapter 152 of the Laws of 1911 requires every foreign corporation, with some exceptions not material here, which has a usual place of business in this State, or which is engaged in business in this State permanently or temporarily, without a usual place of business therein, to appoint a resident of the State to be its true and lawful attorney upon whom all lawful processes in any action against it may be served, and to file the power of attorney in the office of the secretary of State and to pay a fee of ten dollars.

Section 2 provides that "every such corporation before transacting business in this State, shall, upon payment of a fee of ten dollars which is in addition to the fee provided in section one of this Act, file with the secretary of State a copy of its charter, article or certificate of incorporation, . . . a true copy of its by-laws, and a certificate . . . setting forth: (a) The name of the corporation: (b) The location of its principal office: (c) The names and addresses of its president, treasurer, clerk or secretary and of the members of its board of directors: (d) The date of its annual meeting for the election of officers; (e) The amount of its capital stock, authorized and issued, the number and par value of its shares, and the amount paid in thereon to its treasurer." The officers and directors are made subject to penalties and liabilities for false and fraudulent statements and returns, and for failing to comply with the provisions of this section and of sections one and five. The section concludes as follows: "Such failure shall not affect the validity of any contract with such corporation, but no action shall be maintained or recovery had in any of the courts of this State by any such foreign corporation so long as it fails to comply with the requirements of said section." This plaintiff had not complied, at the time of the trial.

We need consider only one or two of the many questions which have been argued. The plaintiff's point that non-compliance with the statute should have been pleaded in abatement is not open to it here. The point was not ruled upon at the trial below, and is not raised in the bill of exceptions.

The only question raised in the bill is whether non-compliance with the provisions of chapter 152 of the Laws of 1911, if properly pleaded and shown, will defeat the maintenance of this suit. We may assume that the plaintiff, a foreign corporation, was engaged in intrastate business in this State, and so became subject to any state regulation which did not burden interstate commerce. (See *Interstate Amusement Co.* v. *Albert,* 239 U. S., 560.) The question still remains whether the 1911 statute applies to this action of trover. We think it does not.

Though it is not technically a penal statute, it virtually penalizes a foreign corporation for non-compliance with its provisions. The courts generally have shown a marked tendency to construe such statutes with considerable strictness, and not to extend their meaning beyond what is fairly expressed. And we think this rule of construction is the correct one. The statutes of this sort in one or more states, by their express terms, are made applicable to actions ex delicto, as well as to actions of contract. The statute in this State is not so made. We think it should not be extended beyond a fair interpretation of its language. To interpret a statute correctly it is necessary to read the context as well as the text, to read a whole sentence and not merely a phrase, to read a section or a chapter and not merely a sentence. The scope of inquiry may embrace even more. The language of a statute may be interpreted in the light of the legislative purposes, the objects to be served, the evils to be remedied.

It is true that in this 1911 statute there is the phrase, "no action shall be maintained or recovery had in any of the courts of this State by any such foreign corporation so long as it fails to comply with the requirements of this statute." But this phrase is a part only of the sentence. The sentence as a whole is, "such failure [to comply with the statute] shall not affect the validity of any contract with such corporation, but no action shall be maintained or recovery had," and so forth. No action for what? no remedy for what? The context shows quite clearly, we think, that the legislative thought, the legislative intent, was concerned with corporate contracts, and with remedies on such contracts. By the statute, a foreign corporation doing business in this State is required

to file certain statements concerning its organization and financial resources. In the course of its business it makes contracts. Those contracts are valid, whether the statute is complied with, or not. *But,* the statute says, "no action shall be maintained, or remedy had by the corporation so long as the corporation fails to comply." That was intended to mean, we think, that no action on such a contract can be maintained, or remedy had for the breach of it, until there is a compliance with the statute.

We discover no intention that this statute should apply to remedies for wrongs committed against the property in this State of a delinquent foreign corporation. The conversion complained of in this action did not grow out of any contract the plaintiff had made. It did not grow out of the plaintiff's business in this State. If it owned property here which was attached as the property of another party and thereby converted, we think it has a right to maintain an action for that wrong, irrespective of the statute. It is not for the court, but for the Legislature, to broaden the statute, if the public welfare requires it.

The direction of a verdict for the defendant on the ground of non-compliance with the statute was error.

*Exceptions sustained.*